**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CHRISTINA PATTERSON FAY**,

    *Plaintiff,*

v.                                                                          Case No. 20-cv-1893 (RCL)

**HUMANE SOCIETY OF THE UNITED
STATES**, *et al.*,

    *Defendants.*

**<u>MEMORANDUM OPINION</u>**

Before the Court are two motions to dismiss plaintiff's Amended Complaint. ECF Nos. 5 & 13. Defendant Town of Wolfeboro, Carroll County, New Hampshire ("the Town" or "the Town of Wolfeboro") moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss plaintiff's claims against it for lack of personal jurisdiction. ECF No. 5. And defendants Humane Society of the United States ("the Humane Society" or "HSUS") and Leana Elaine Stormont, an HSUS staff attorney, move under Rule 12(b)(6) to dismiss the Amended Complaint for failure to state a claim. ECF No. 13; *see* ECF No. 1-4 ¶ 35. Both motions have been fully briefed and are ripe for consideration. ECF Nos. 5 & 13–17.

For the reasons explained below, the Court will **GRANT** the Town of Wolfeboro's motion to dismiss for lack of personal jurisdiction, ECF No. 5. The Court will also **GRANT** the Humane Society and Ms. Stormont's motion to dismiss for failure to state a claim, ECF No. 13, without prejudice as to Counts I and III and with prejudice as to Count II.

1

# I. BACKGROUND

## A. Factual Allegations

The following narrative of events comes from plaintiff's Amended Complaint, ECF No. 1-4. Plaintiff Christina Patterson Fay had "developed an expertise in the breeding and care of European Great Danes." Am. Compl., ECF No. 1-4, ¶ 7. She would purchase Great Danes from Europe, transport them to her home in New York, breed them, and sell them to new owners. *Id.* After plaintiff separated from her husband in 2017, she relocated from New York to the town of Wolfeboro, New Hampshire. *Id.* at ¶ 8. There, she purchased a home on fifty-three acres of land and brought fifty of her Great Danes to the property to live with her. *Id.* She also hired three assistants to help her tend to the dogs. *Id.* By April 2017, her pack had grown to seventy-five adult Great Danes and nine puppies. *Id.* at ¶ 9.

Unbeknownst to plaintiff, the Humane Society of the United States, a private, non-profit organization, had been keeping tabs on plaintiff since she moved to Wolfeboro and plotting a raid of her new home. *Id.* at ¶¶ 10–11. In anticipation of the raid, the Humane Society launched a social media campaign to "stir up public hatred" for plaintiff. *Id.* at ¶ 13. The campaign was led by one of plaintiff's neighbors, who published "false statements" on Facebook to help get plaintiff "charged and convicted of animal cruelty" and justify the Humane Society's decision to take her Great Danes. *Id.* Plaintiff's neighbor did so even though she had never "set foot" in plaintiff's home, witnessed plaintiff's "treatment of her dogs," or observed the "physical condition" of the dogs. *Id.*

To carry out the raid, the Humane Society contracted with the Town of Wolfeboro. *Id.* at ¶ 12. Under the terms of their agreement, the Humane Society would volunteer "their services, free of charge to the Town" and "devise, coordinate, and carry out a raid" to take custody of

plaintiff's Great Danes. *Id.* And although the Humane Society's "main office" is in Washington, D.C., *id.* at ¶ 2, the organization "flew its staff to New Hampshire," paid for their living expenses, and "rotated out" volunteers in New Hampshire each week. *Id.* at ¶ 16.

By mid-June 2017, the Humane Society was ready to carry out the raid. *Id.* at ¶ 21. On the morning of June 16, approximately eighty Wolfeboro police officers and Humane Society volunteers descended on plaintiff's property. *Id.* The police officers, equipped with bulletproof vests and assault rifles, swarmed plaintiff's land while a Wolfeboro fire truck and the Humane Society's "large trucks" drove onto her property. *Id.* The officers "walked onto the porch," "banged on the door[,] and began yelling[,] demanding entrance." *Id.* at ¶ 22. When one of plaintiff's assistants opened the door, plaintiff's "arms were grabbed," "forced behind her back," and handcuffed. *Id.* Plaintiff was then escorted out of her home and taken to the Wolfeboro jail. *Id.* As police officers removed plaintiff and her assistant from the home, Humane Society officers, agents, and volunteers "pushed their way into" plaintiff's house. *Id.* at ¶ 25.

Though the Wolfeboro police officers had a warrant "in hand," the warrant was based on a probable-cause affidavit that contained false information. *Id.* at ¶ 23. The affidavit stated that plaintiff violated a Wolfeboro ordinance prohibiting residents from owning more than thirty dogs at a time. *Id.* Yet plaintiff had an updated and valid "Wolfeboro group dog license" that permitted her to keep more than thirty dogs on her property. *Id.* Furthermore, none of the Humane Society volunteers who "pushed their way into [plaintiff's] home" were named in the search warrant. *Id.* at ¶ 25.

The raid took fifteen hours to complete. *Id.* at ¶ 26. During that time, plaintiff's Great Danes "were crammed into undersized cages," loaded onto trucks owned by the Humane Society, and taken to a warehouse. *Id.* at ¶ 27. Before they drove off, the Humane Society took photographs

of the dogs "crammed into" the undersized cages. *Id.* Those photographs were later "photoshopped" to "enhance and embellish the scene" so it looked like plaintiff had been forcing her dogs to live in small cages, covered in excrement and urine. *Id.* at ¶¶ 26–27. These edited images were used as part of the ongoing "public smear campaign" against plaintiff. *Id.* at ¶ 26.

During the raid, Humane Society volunteers and agents took more than just the Great Danes. They also "tore up carpet, damaged hardwood floors, punched holes in walls and ceilings[,]" and took from plaintiff's home diamond wedding rings, other jewelry, clothing, a camera, artwork, "personalized Australian dog collars" worth $10,000, beds, mattresses, furniture, appliances, $15,000 worth of gold-rimmed china, and personal papers. *Id.* at ¶ 28. Outside the home, they took her "air-conditioned and heated dog houses," storage buildings, and metal dog crates. *Id.* They also damaged playground equipment, dog-run fencing, and ramps beyond repair. *Id.* Because of this damage, plaintiff's home was condemned a few days after the raid without prior notice or a hearing. *Id.* at ¶ 29.

After being charged with several misdemeanor counts of animal cruelty, a Carroll County judge held a bench trial and found plaintiff guilty. *Id.* at ¶ 30. Plaintiff then "appealed" to the Carroll County Superior Court for a jury trial. *Id.* Her request was granted. *Id.* Before and during plaintiff's nine-day jury trial, the Humane Society "promoted and directed" a "barrage of publicity that referred to her [as] an animal abuser [and] a monster." *Id.* at ¶ 30 & 35.

The Humane Society also sent one of its staff attorneys, Leana Elaine Stormont, to be present in New Hampshire for the jury trial. *Id.* at ¶ 35. In an attempt to "vilify" plaintiff and "convince the trial judge to dole out harsher punishment," Ms. Stormont sent a binder to the trial judge with "vicious" and "embellished" documents drafted by plaintiff's ex-husband. *Id.* She did so without verifying whether the statements in those documents were true. *Id.* Ms. Stormont also

sent a duplicate binder to plaintiff's defense counsel and the Carroll County prosecutors. *Id.* When the trial judge received the binder, he ordered it to be sealed so the public could not access it. *Id.* Later, Ms. Stormont sent a second letter that was a "scathing rebuke" of the trial judge's "ability to dispense justice." *Id.*

### B. Procedural History

In June 2020, plaintiff sued the Humane Society, Ms. Stormont, and the Town of Wolfeboro in Superior Court for the District of Columbia. Am. Compl. 3. Plaintiff's Amended Complaint contains sixteen pages of factual allegations, which include the narrative of events described above, along with detailed information about the health and employment status of one of her assistants, *id.* at ¶ 9, the names of people who purchased her Great Danes (and the names of the dogs they bought), *id.*, the names and ages of the Great Danes who have died while in the Humane Society's custody, *id.* at ¶ 19, and those dogs' cause of death, *id.* at ¶¶ 31–34.

Based on these factual allegations, plaintiff's Amended Complaint raises three counts. Count I invokes several state and federal causes of action, including a claim under 42 U.S.C. § 1983 for alleged deprivations of her Fourth and Fourteenth Amendment rights. Am. Compl. ¶¶ 38–42. Count II alleges illegal racketeering by all defendants in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at ¶¶ 43–45. And Count III raises "common law claims" for theft, conversion, defamation, slander, trespass, "damage and destruction caused to [plaintiff]'s property," and intentional infliction of emotional distress. *Id.* at ¶¶ 47–51.

The Town timely removed the matter to this Court based on diversity and federal question jurisdiction. ECF No. 1.[1] Shortly thereafter, the Town moved to dismiss for lack of personal

---

[1] The Humane Society and Ms. Stormont consented to removal. ECF No. 4.

jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF No. 5. The Humane Society and Ms. Stormont also moved to dismiss under Rule 12(b)(6) for failure to state a claim. ECF No. 13. Plaintiff—who is represented by counsel—opposed both motions, ECF Nos. 14 & 15, and the defendants replied, ECF Nos. 16 & 17. Both motions to dismiss are now ripe.

### III. DISCUSSION

#### A. The Court Lacks Personal Jurisdiction Over the Town of Wolfeboro

The Town of Wolfeboro moves to dismiss plaintiff's claims against it for lack of personal jurisdiction under Rule 12(b)(2). ECF No. 5. To determine whether it may exercise personal jurisdiction over the Town, the Court engages in a two-step inquiry. *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013). First, as a federal court sitting in the District of Columbia, this Court may exercise personal jurisdiction only to the extent authorized by the District's Long Arm Statute. Fed. R. Civ. P. 4(k)(1)(A); D.C. Code §§ 13-422 & 13-423. Second, any exercise of personal jurisdiction under the District's Long Arm Statute must comport with the Due Process Clause of the United States Constitution. *Thompson Hine, LLP*, 734 F.3d at 1189. This requires that the defendant have sufficient contacts with the District such that exercising personal jurisdiction over the defendant would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The District's Long Arm Statute authorizes personal jurisdiction based on an "enduring relationship" with the District (i.e., "general" personal jurisdiction) or based on conduct within the District (i.e., "specific" personal jurisdiction). *See* D.C. Code §§ 13-422 & 13-423. Plaintiff concedes that the Court does not have general personal jurisdiction over the Town. ECF No. 14-1 at 3. Instead, she invokes a provision of the District's Long Arm Statute authorizing specific

personal jurisdiction over "a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." ECF No. 14-1 at 4 (citing D.C. Code § 13-423(a)(1)).

When a plaintiff invokes the "transacting any business" clause of the District's Long Arm Statute, the statutory and constitutional inquiries collapse into one. *Thompson Hine, LLP*, 734 F.3d at 1189. That is so because the "transacting any business" clause has been interpreted as "provid[ing] jurisdiction to the full extent allowed by the Due Process Clause." *Id.* (quoting *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)); *accord Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269 (D.C. 2001). Thus, to survive the Town's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that: (1) the Town is a "person," (2) the Town "transacted any business" in the District, and (3) her claim for relief "aris[es] from" that business. D.C. Code § 13-423(a)(1); *see Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990) ("The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant.").

As a threshold matter, the parties disagree as to whether the Town of Wolfeboro is a "person" under the District's Long Arm Statute. *See* ECF Nos. 5-1 at 6–7 & 14-1 at 3–4. The District's Long Arm Statute defines "person" as "includ[ing] an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia." D.C. Code § 13-421. Under this definition, there are two ways the Town of Wolfeboro could be a "person." First, as a municipal corporation, the Town could be considered a "corporation." *See* N.H. Rev. Stat. § 31:1 ("Every town is a body corporate and politic, and by its corporate name may sue and be sued,

prosecute and defend, in any court or elsewhere.”); *Grant v. Cooke*, 2 Mackey 165, 195 (D.C. 1871) (recognizing that “an incorporation of the inhabitants of a town . . . to enable it to conduct its local affairs” is a municipal corporation). And even if “corporation” as used in the Long Arm Statute’s definition of “person” does not include municipal corporations, *see* 1 McQuillin, *The Law of Municipal Corporations* § 2:20 (3d ed.), the Town would surely fall under the catchall clause as “any other legal or commercial entity.” D.C. Code § 13-421; *see Entity*, Black’s Law Dictionary (10th ed. 2014) (defining “Entity” as “[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners”).[2]

Nevertheless, plaintiff has not met her burden of showing that the Town “transact[ed] any business” in the District. D.C. Code § 13-423(a)(1); *see Crane*, 894 F.2d at 456. To establish that the Town transacted business in the District, plaintiff must show that the Town “purposefully engaged in some type of commercial or business-related activity directed at District residents.” *Holder*, 779 A.2d at 270–71 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981). Plaintiff argues that the Town transacted business in the District because it “sought the services and aid from HSUS in Washington, D.C.” and “communicated with HSUS in Washington, D.C. to negotiate a contract over email and phone.” ECF No. 14-1 at 5–6. But without allegations (or some other evidence) showing that the

---

[2] To argue that it is not a “person” under § 13-421, the Town points to the D.C. Circuit’s holding in *United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) that *states* are not “persons” under § 13-421. *See* ECF No. 16 at 2 n.2. Yet *Ferrara* is distinguishable on its facts. There, the D.C. Circuit relied on *Will v. Michigan Dep’t of State Police*, 491 U.S. 58 (1989)—which clarified that a state is not a “person” under 42 U.S.C. § 1983—to hold that the State of New Mexico is not a “person” under the District’s Long Arm Statute. 54 F.3d at 831–32. Citing *Will*, the D.C. Circuit noted that the word “person” ordinarily does not include states because statutes that seek to impose liability upon or jurisdiction over states raise serious constitutional questions relating to state sovereign immunity. *Id*. at 831 (citing *Will*, 491 U.S. at 64). This concern is irrelevant in the present case, however, because the Town of Wolfeboro is not a state and thus enjoys no sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 756 (1999). Thus, the D.C. Circuit’s rationale for excluding states from § 13-421’s definition of “person” does not apply here.

Town purposefully directed these business activities with the Humane Society at residents in the District, the mere acts of seeking out the services of an organization with its "main office of operations" in the District, Am. Compl. ¶ 2, and negotiating a contract with that organization are insufficient for personal jurisdiction under the Due Process Clause. *Burger King Corp.*, 471 U.S. at 472.

Not only is plaintiff's Amended Complaint devoid of any allegations that the Town purposefully directed its business activities at residents of the District, but an uncontested affidavit from the Town's Chief of Police further shows that the Town did not. *See* ECF No. 5-2. In his affidavit, Police Chief Dean Rondeau explains that after a "*local* humane officer" gave the Wolfeboro Police Department notice that "numerous European Great Dane dogs were being kept in unsafe and unsanitary conditions at a property located in Wolfeboro," the Town contacted Lindsay Hamrick, a Humane Society employee "*located in New Hampshire*, to discuss potential options." *Id.* at ¶¶ 2–4 (emphases added). And when the Wolfeboro Police Department eventually signed the agreement with the Humane Society, Chief Rondeau explains, "[a]ll of the individuals who signed the Agreement *were located in New Hampshire when they signed the Agreement*." *Id.* at ¶ 7 (emphasis added). Furthermore, "[t]he Town did not send any employees or representatives to Washington, D.C. to discuss the Agreement or to discuss any plans related to the removal, transportation, or care of the dogs." *Id.* at ¶ 8. "All discussions with HSUS relating to the Agreement occurred either in meetings with Ms. Hamrick in New Hampshire or by phone calls with HSUS." *Id.* at ¶ 9. The Chief added that "[w]hile some of the individuals on [those] calls may have been in Washington, D.C. during the call[s], I do not know if that is the case." *Id.* These statements, which are uncontested by plaintiff,[3] further show that the Town did not "purposefully

---

[3] Rather than contesting Police Chief Rondeau's statements, plaintiff attempts to use them as evidence *favorable* to her argument by mischaracterizing their contents. In his affidavit, Chief Rondeau states that

direct" any of its business dealings with the Humane Society at residents in the District. *Burger King Corp.*, 471 U.S. at 472 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). The Town thus cannot be haled into court here.

As a last-ditch effort, plaintiff argues that exercising personal jurisdiction over the Town comports with the Due Process Clause because the Town "signed an agreement with HSUS that made Washington, D.C. the preferred forum for legal purposes and choice of law." ECF No. 14-1 at 6. Thus, plaintiff says, the Town's "agreement could foreseeably bring them to Washington, D.C. for the purposes of litigation." *Id.* at 7. Contrary to plaintiff's representation, however, the contract itself says nothing about Washington, D.C. being the "preferred forum for legal purposes." *Compare id.* at 6, *with* ECF No. 14-4. In fact, the portion of the contract plaintiff references is titled "Choice of Law" and provides only that "this Agreement shall be governed by and construed according to the laws of the District of Columbia." ECF No. 14-4 ¶ 13; *see* ECF No. 14-1 at 8. Perhaps this choice-of-law provision would put the Town on notice that it could be sued in the District *for violating its agreement with the Humane Society*. But that is not the nature of the present suit.

In sum, because plaintiff has not met her "burden of establishing a factual basis for the exercise of personal jurisdiction" over the Town, *Crane*, 894 F.2d at 456, the Court will grant the Town of Wolfeboro's motion to dismiss for lack of personal jurisdiction, ECF No. 5.

---

"[a]ll discussions relating to the Agreement [between the Town and the Humane Society] occurred either in meetings with Ms. Hamrick in New Hampshire or by phone calls with HSUS." ECF No. 5-2 ¶ 9. Yet in her opposition brief, plaintiff writes: "Chief Rondeau, in his affidavit, states that . . . 'all discussions with HSUS relating to the agreement *occurred . . . by phone calls with HSUS.*" ECF No. 14-1 at 6 (emphasis added). Conveniently omitted from plaintiff's recounting of Chief Rondeau's statement is the phrase "either in meetings with Ms. Hamrick in New Hampshire." *See* ECF No. 5-2 ¶ 9. Needless to say, this transparent attempt to deceive the Court has failed. Should plaintiff's counsel continue to flout Federal Rule of Civil Procedure 11(b)(3) by misrepresenting evidence in plaintiff's filings, the Court will not hesitate to impose appropriate sanctions.

### B.  Plaintiff's Amended Complaint Does Not State a Claim Against the Humane Society or Ms. Stormont

The other two defendants—the Humane Society and Ms. Stormont—move to dismiss plaintiff's Amended Complaint under Rule 12(b)(6) for failure to state a claim. ECF No. 13. As noted above, plaintiff's Amended Complaint brings three counts against the Humane Society and Ms. Stormont: Count I invokes several causes of action, including a claim under 42 U.S.C. § 1983 for the alleged deprivation of her Fourth and Fourteenth Amendment rights. Am. Compl. ¶¶ 38–42. Count II alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* at ¶¶ 43–45. And Count III raises the following "common law claims": theft, conversion, defamation, slander, trespass, "damage and destruction caused to [plaintiff]'s property," and intentional infliction of emotional distress. *Id.* at ¶¶ 47–51.

Under Federal Rule of Civil Procedure 8(a), a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d) adds that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). While the pleader is "entitled to considerable latitude regarding the mode of stating a claim for relief," she must "give reasonable notice of the claims that are being asserted." Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, *Federal Practice & Procedure* § 1216 (3d ed.). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erikson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, to survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the court can reasonably infer from the factual content pleaded that the defendant

is liable for the alleged misconduct. *Id.* Plausibility requires more than a "sheer possibility that the defendant has acted unlawfully" but does not require a "probability" that the defendant is in the wrong. *Id.* Though legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. For this reason, "'naked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation[s] of the elements of a cause of action" will not survive a motion to dismiss. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

The Humane Society and Ms. Stormont argue that the Amended Complaint does not comply with Federal Rule of Civil Procedure 8(a) because it is a "scattershot pleading," i.e., one that does not indicate which factual allegations support each claim for relief. ECF No. 13 at 19. Without this basic information, they argue, the Amended Complaint fails to give them "fair notice of the claims against them and the grounds upon which the claims rest." *Id.* at 18–19 (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996)). The Humane Society and Ms. Stormont also argue that Count II fails to adequately plead a RICO claim because it improperly groups all defendants together and fails to allege a plausible RICO "enterprise," any "racketeering activity," or any "pattern" of racketeering activity. *Id.* at 26–36.

In opposition to the Humane Society and Ms. Stormont's motion, plaintiff argues that her Amended Complaint "does not contain scattershot assertions of fact," but she makes no effort to explain why that is so. ECF No. 15 at 2. She also argues that the Amended Complaint complies with Rule 8 because it "is not a formulaic recitation of the elements of a cause of action but rather is supported by a detailed history of events and detailed explanations of the adverse effects upon [plaintiff]." *Id.* And if the Court finds that her Amended Complaint does *not* satisfy Rule 8, plaintiff argues, she should be given leave to amend. *Id.* at 2 & 5. Notably, although plaintiff's opposition responds to the Humane Society and Ms. Stormont's characterization of her pleading as a

"scattershot" pleading, it does not so much as mention any of the defendants' arguments specific to her RICO claims. *See generally* ECF No. 15.

The Court finds that none of the three counts in plaintiff's Amended Complaint states a claim against the Humane Society or Ms. Stormont. First, Count I neither provides a "short and plain statement" of the claims it brings, Fed. R. Civ. P. 8(a)(2), nor identifies which factual allegations in plaintiff's sixteen-page narrative of events amount to the various legal theories it invokes. *See* Am. Compl. ¶¶ 38–42. Similarly, Count III also gives no indication of which factual allegations support the five "common law claims" it references. *Id.* at ¶¶ 43–45. And as plaintiff apparently concedes, Count II does not state a RICO violation under 18 U.S.C. §§ 1962(c) & (d) because it does not adequately plead the required element of "racketeering activity." *See* 18 U.S.C. § 1962(c). For these reasons, the Court will grant the Humane Society and Ms. Stormont's Rule 12(b)(6) motion to dismiss, ECF No. 13.

   a.   Count I: "42 U.S.C. § 1983 et seq."

Count I does not state a claim upon which relief can be granted for two reasons. First, the Court cannot discern what cause of action (or causes of action) Count I pleads. After incorporating by reference all preceding paragraphs, plaintiff alleges that "[she] brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law, of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution." Am. Compl. ¶ 39. Based on this paragraph—and the title of Count I: "42 U.S.C. § 1983 *et seq.*"—it appears that Count I brings a § 1983 claim for alleged violations of her Fourth and Fourteenth Amendment rights. So far, so good.

But in the next paragraph, plaintiff adds the following:

   40. HSUS, [Ms.] Stormont, and [the Town of] Wolfeboro acting jointly and
   severally under the color of law, created and implemented a conspiracy that

13

> resulted in the unlawful deprivation of [plaintiff]'s lawfully acquired and
> owned property, damage to [plaintiff]'s property, criminal acts, defamation,
> and the intentional and negligent infliction of emotional harm causing in
> excess of thirty-five million dollars ($35,000,000.00) in damages.

*Id.* at ¶ 40. It is unclear whether plaintiff believes that these alleged wrongs amount to Fourth and

Fourteenth Amendment violations, or whether she pleads these harms as separate causes of action.

The final two paragraphs of Count I only confuse the matter. Those paragraphs read:

> 41. [Plaintiff] brings this action pursuant to 42 U.S. Code 1988(a), (b), (c).
> [sic] Proceedings in Vindication of Civil Rights as applied to each State, to
> the District of Columbia and to the Commonwealths as the Defendants,
> jointly and severally violated [plaintiff]'s United States Constitutional Civil
> Rights to Life, Liberty, Property and the Pursuit of Happiness, against
> Unlawful Intrusions, against Unlawful Detainment, against Unnecessary
> and Unreasonable. [sic]

> 42. [Plaintiff] brings this action pursuant to 18 U.S. Code [§§] 1962(c) &
> (d); Conspiracy to commit trespass, theft, conversion, destruction of
> property and defamation of [plaintiff]'s character, disrupting interstate and
> foreign commerce for individual and institutional financial gain as applied
> to each State, to the District of Columbia and to the Commonwealths
> resulting in [plaintiff] incurring substantial and future damages.

*Id.* at ¶¶ 41 & 42. As for paragraph 41, § 1988 identifies the body of law that governs federal civil

rights suits and permits the recovery of attorney's and expert fees in those matters. 42 U.S.C.

§ 1988. It does not provide a cause of action. *See id.* It is thus unclear why plaintiff pleads that she

"brings" this suit under § 1988. And paragraph 42 has nothing to do with § 1983, as it alleges two

RICO violations. Am. Compl. ¶ 42. From these four paragraphs, the Court cannot identify the

cause (or causes) of action brought in Count I. Does plaintiff plead a § 1983 claim? Common law

claims for defamation, trespass to chattels, and intentional infliction of emotional distress? A RICO

violation? Without this most basic information, Count I falls short of the Rule 8 requirement that

the pleader give "a short and plain statement of the claim." Fed. R. Civ. P. 8(a).

14

Furthermore, the Amended Complaint also fails to identify the *conduct* that plaintiff believes amounted to the harms alleged in Count I. Perhaps expecting the Court to do this work for her, plaintiff incorporates by reference all factual allegations in her Amended Complaint, many of which have nothing to do with the legal theories raised in Count I. Am. Compl. ¶ 38. Yet it is plaintiff's counsel's responsibility—not that of the Court—to organize the pleading so that it is clear which factual allegations support each cause of action. *Chennareddy v. Dodaro*, 282 F.R.D. 9, 16 (D.D.C. 2012), *aff'd*, 697 F. App'x 704 (D.C. Cir. 2017); *see U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

As a result of this inartful drafting, the Court is left to "guess at what factual allegations underpin each claim," making it impossible to determine which allegations, if any, show that plaintiff is entitled to relief on the various causes of action cobbled together in Count I. *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 416 (D.D.C. 2017). Such a pleading does not comply with Rule 8(a)'s requirement that plaintiff set forth "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a). Nor does it give the Humane Society and Ms. Stormont adequate notice of the allegations lodged against them. *See Erikson*, 551 U.S. at 93.

> b. *Count III: "Common Law Claims"*

Similarly, Count III also fails to identify which of the many factual allegations in the Amended Complaint give rise to each of the causes of action it invokes. Count III, titled "Common Law Claims," includes the following allegations:

> 46. Plaintiff restates and incorporates fully of [sic] the allegations of paragraphs 1–45 above as if fully stated herein.
>
> 47. [Plaintiff] brings this action against the Defendants, jointly and severally, [for] theft and conversion of [plaintiff]'s property.

15

48. [Plaintiff] brings this action against the Defendants, jointly and severally, for defamation and slander.

49. [Plaintiff] brings this action against the Defendants, jointly and severally, for trespass.

50. [Plaintiff] brings this action against the Defendants, jointly and severally, for the damage and destruction caused to her property.

51. [Plaintiff] brings this action against the Defendants, jointly and severally, for the intentional and continuing infliction of emotional harm.

Am. Compl. ¶¶ 46–51.

Though plaintiff incorporates all preceding paragraphs into Count III, nowhere in the Amended Complaint does plaintiff indicate which factual allegations give rise to each of these "common law claims." As explained above, the Court will not parse through plaintiff's sixteen-page narrative of events to identify facts that could state a claim for each of these alleged wrongs. *See Chennareddy*, 282 F.R.D. at 16. Because it does not identify the conduct that plaintiff believes amounts to each of these causes of action, Count III does not give the Humane Society and Ms. Stormont fair notice of "the grounds upon which [these claims] rest[ ]." *Twombly*, 550 U.S. at 555. Thus, Count III does not adequately state a claim upon which relief can be granted.

   *c.  Count II: "RICO Conspiracy"*

As explained above, the Humane Society and Ms. Stormont argue that plaintiff fails to state a RICO violation because Count II improperly groups all defendants together and fails to adequately plead a RICO "enterprise," any "racketeering activity," or any "pattern" of racketeering activity. ECF No. 13 at 26–36. In her opposition brief, plaintiff does not refute any of these arguments. *See generally* ECF No. 15. In fact, the opposition never even mentions her RICO claims. The Court will treat plaintiff's failure to respond to these arguments as a concession that Count II fails to state a claim. *See Hopkins v. Women's Div.*, *Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff

files a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff fails to address as conceded.").

Alternatively, even if plaintiff *had* opposed the Humane Society and Ms. Stormont's arguments attacking her RICO claims, the Court would still rule in the defendants' favor. For Count II fails to adequately plead any "racketeering activity," which is a necessary element of a RICO claim. *W. Assocs. Ldt. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001).

After incorporating all preceding paragraphs, Am. Compl. ¶ 43, Count II states:

> 44. [Plaintiff] brings this action pursuant to 18 U.S. Code 1961, Racketeering Section 1344 Institutional Fraud, Section 1503 Obstruction of Justice, Section 1957, (RICO) Trespass, Theft of property, Conversion of property, Destruction of Property for institutional and individual financial gain against the Defendants jointly and severally in that they engaged and have continued to engage in a pattern of conduct throughout the United States of America in violation of RICO causing harm to [plaintiff] whereby she should be awarded treble damages, costs of this litigation, and attorney['s] fees that collectively will equal in excess of $35,000,000.00.

*Id.* at ¶ 44.

Given this somewhat confusing phrasing, identifying the nature of plaintiff's RICO claim requires some interpretive work. To begin, § 1961 is the "Definitions" section of RICO, so plaintiff cannot bring a cause of action under that Section. *See* 18 U.S.C. § 1961. Yet in paragraph 42—which is the final paragraph of Count I—plaintiff invokes two provisions of RICO that list prohibited activities: §§ 1962(c) & (d). Am. Compl. ¶ 42. Presumably, plaintiff intended to include paragraph 42 in Count II. Though it is not the Court's job to reorganize plaintiff's pleading for the sake of clarity, *Chennareddy*, 282 F.R.D. at 16, Federal Rule 8(e) does state that "pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Accordingly, the Court will read Count II in connection with paragraph 42 of Count I and interpret these allegations collectively as bringing a RICO claim under 18 U.S.C. §§ 1962(c) & (d).

Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under subsection (c), plaintiff must allege that the Humane Society and Ms. Stormont (1) conducted, (2) an enterprise, (3) through a pattern, (4) of "racketeering activity." *United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 589 (D.C. Cir. 2016). "Racketeering activity" refers to the commission of certain statutorily defined predicate criminal acts. *W. Assocs. Ldt. P'ship*, 235 F.3d at 633; *see* 18 U.S.C. § 1961 (defining the criminal acts that amount to "racketeering activity" under RICO).

Based on the allegations in paragraphs 42, 44, and 45 of the Amended Complaint, the Court can identify four RICO predicate criminal acts: (i) bank fraud in violation of 18 U.S.C. § 1344, (ii) obstruction of justice in violation of 18 U.S.C. § 1503, (iii) engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, and (iv) mail fraud in violation of 18 U.S.C. § 1341.[4] Am. Compl. ¶¶ 42, 44–45. As factual support for these alleged predicate criminal acts, plaintiff pleads that the Humane Society has "engaged in the use of electronic, radio, television, and print media to fraudulently obtain charitable donations of money and goods from the public," has "fraudulently advertised to give the public the impression

---

[4] Paragraph 44 references 18 U.S.C. §§ 1344, 1503 and 1957 by name. Am. Compl. ¶ 44. Paragraph 45 alleges that defendants engaged in "a pattern of racketeering activity that includes conspiracy, obstruction of justice, intimidation, perjury, mail fraud, [and] use of the public airwaves and print media to spread false and embellished information, publish malicious slander and defamation[.]" *Id.* at ¶ 45. From that list, only mail fraud, in violation of 18 U.S.C. § 1341, is a "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1). Finally, paragraph 42—which the Court will read in connection with Count II for the reasons explained above—alleges a conspiracy "to commit trespass, theft, conversion, destruction of property and defamation of [plaintiff]'s character." Am. Compl. ¶ 42. None of these actions are "racketeering activities" under RICO. *See* 18 U.S.C. § 1961(1).

that it possesses police powers," has "used intimidation tactics through the United States, using the airwaves and print media, to try to impose their ideology that there needs to be legislature passed that outlaws the breeding, selling[,] and possession of pedigree dogs," and has "fraudulently characterized the breeding [of dogs] . . . as acts of criminal abuse." *Id.* at ¶ 45.

None of these allegations, however, suffices to state a claim for the four predicate criminal acts listed in the Amended Complaint. To begin, plaintiff's allegations of bank fraud and mail fraud can be easily dismissed as insufficient. When a RICO claim is based on predicate criminal acts involving fraud, the pleading must satisfy the heightened standard set forth in Federal Rule of Civil Procedure 9(b). *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 157 (D.D.C. 2016). Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires allegations of the "time, place, and content of the false misrepresentations," as well as "the fact misrepresented," and what was gained as a result of the fraud. *United States ex rel. Williams v. Martin-Baker Aircraft Co.* ("*Williams*"), 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Yet plaintiff's Amended Complaint is devoid of any facts "stat[ing] with particularity the circumstances constituting" bank fraud or mail fraud. Fed. R. Civ. P. 9(b); *see generally* Am. Compl. At most, plaintiff alleges that the Humane Society has "consistently engaged in the use of electronic radio, television, and print media to fraudulently obtain charitable donations of money and goods from the public." Am. Compl. ¶ 45. But nowhere does plaintiff allege the "time, place, and content of the false misrepresentations" that amounted to such mail fraud or "the fact[s] misrepresented." *Williams*, 389 F.3d at 1256.

Plaintiff's claims of obstruction of justice and engaging in monetary transactions in property derived from specified unlawful activity fare no better. Though she need not satisfy the

heightened pleading standard to state a RICO claim based on either of these predicate criminal acts, Count II makes no mention of the conduct that the Humane Society or Ms. Stormont allegedly engaged in to commit these crimes. As explained above, the Court will not go digging through the incorporated factual narrative to identify allegations that could suffice to state a claim for these crimes. *See Chennareddy*, 282 F.R.D. at 16.

Furthermore, because the Court finds that the Amended Complaint does not adequately plead any "racketeering activity," which is required to state a claim under 18 U.S.C. § 1962(c), the Court need not address the other elements of a RICO violation under § 1962(c). Nor must it address plaintiff's second theory of liability raised in Count II, i.e., that the defendants conspired to violate § 1962(c). *See* Am. Compl. ¶ 42. Without a § 1962(c) violation, there can be no conspiracy to violate § 1962(c). *Danielsen v. Burnside-Ott Aviation Training Ctr. Inc.*, 941 F.2d 1220, 1124 (D.C. Cir. 1991) (recognizing that "[s]ubsection (d) adds nothing substantive to the law" but instead "makes it unlawful to violate any of the preceding" subsections).

In sum, none of the counts in plaintiff's Amended Complaint states a claim against the Humane Society or Ms. Stormont. The Court will thus grant the Humane Society and Ms. Stormont's Rule 12(b)(6) motion to dismiss, ECF No. 13. Counts I and III of the Amended Complaint will be dismissed without prejudice. Count II, however, will be dismissed with prejudice. As explained above, the Court will treat plaintiff's failure to oppose the Humane Society and Ms. Stormont's arguments as to plaintiff's RICO claims in Count II as a concession that Count II does not state a claim. *See Hopkins*, 284 F. Supp. 2d at 25.

### IV. CONCLUSION

For the reasons explained above, the Court will **GRANT** the Town's motion to dismiss for lack of personal jurisdiction, ECF No. 5. It will also **GRANT** the Humane Society and

Ms. Stormont's motion to dismiss for failure to state a claim, ECF No. 13, without prejudice as to Counts I and III and with prejudice as to Count II of the Amended Complaint, ECF No. 1-4. Within thirty days of this date, plaintiff may move for leave to file a Second Amended Complaint as to Counts I and III.

 An Order consistent with this Memorandum Opinion shall follow.


Date: January 19, 2021       /s/ Royce C. Lamberth

               Hon. Royce C. Lamberth
               United States District Judge